## Steerman et al. v. Krouse et al.

*Isidor Ostroff*, for plaintiffs.
*Norman R. Dutton*, for respondents.

BOK, P. J., September 30, 1939.—Plaintiffs, who invested largely in a theatre, made an informal oral agreement with defendants for union labor to operate the motion picture machines. They also incorporated the business. Finding they were losing money, they became licensed operators and began to work the machines themselves, when the theatre opened about two weeks ago after being closed for the summer.

The union at once picketed the place, and the receipts fell off immensely. Plaintiffs ask us to enjoin the union from picketing on the ground that they have a right to work their own business if they want to, and that no labor dispute is involved.

The Labor Anti-Injunction Act of June 2, 1937, P. L. 1198, 43 PS §206, ties our hands if the case presents a labor dispute and if the amendment to the act approved June 9, 1939, P. L. 302, is held not to apply.

Section 3 of the Labor Anti-Injunction Act of 1937, supra, defines a labor dispute as follows:

"When. used in this act and for the purposes of this act—

"(a) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in a single industry, trade, craft or occupation, or have direct or indirect interests therein, or who are employes of the same employer, or who are members of the same or an affiliated organization of employers or employes, whether such dispute is—(1) between one or more employers or associations of employers, and one or more employes or associations of employes; (2) between one or more employers or associations of employers, and one or more employers or associations of employers; or (3) between one or more employes or association of employes, and one or more employes or association of employes; or when the case involves any conflicting or competing interests in a 'labor dispute' (as hereinafter defined) of 'persons participating or interested' therein (as hereinafter defined).

"(b) A person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him or it, and if he or it is engaged in the same industry, craft or occupation in which such dispute occurs or has a direct or indirect interest therein, or is a member, officer or agent of any association composed in whole, or in part, of employers or employes engaged in such industry, trade, craft or occupation.

"(c) The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment or concerning employment relations or any other controversy arising out of the respective interests of employer and employe, regardless of whether or not the disputants stand in the proximate relation of employer and employe, and regardless of whether or not the employes are on strike with the employer."

The case before us seems to be covered by this language. It involves more than the naked question of

whether an owner may prosecute his own business with his own hands, since plaintiffs had agreed to use union labor and had actually used it. Even so, the act is wide enough in its expression to cover a dispute of ideas, and the matter of a man's right to be both capitalist and laborer, or the right of labor to make him choose, is one for the forum rather than for the courts. The democratic principle for which plaintiffs so seriously contend is balanced by the equally democratic principle that defendants may establish their philosophies if they can, and there, it appears to us, we must leave them. The actual cause of the difficulty is financial, and it is to be hoped that labor will increasingly take the view that it is to its best interest to keep business alive rather than to cast it into loss by excessive demands. There is evidence of such coöperation here, as there is considerable reason to believe that on several points plaintiffs' candor leaves a good deal to be desired.

The 1939 amendment to the 1937 act does nothing, in our opinion, to untie our hands. Its pertinent provisions are:

"Provided, however, That this act shall not apply in any case . . .

"(b) Where a majority of the employes have not joined a labor organization, or where two or more labor organizations are competing for membership of the employes, and any labor organization or any of its officers, agents, representatives, employes or members engages in a course of conduct intended or calculated to coerce an employer to compel or require his employes to prefer or become members of or otherwise join any labor organization.

"(c) Where any person, association, employe, labor organization, or any employe, agent, representative, or officer of a labor organization engages in a course of conduct intended or calculated to coerce an employer to commit a violation of the Pennsylvania Labor Relations Act of 1937 or the National Labor Relations Act of 1935.

"(d) Where in the course of a labor dispute as herein defined, an employe, or employes acting in concert, or a labor organization, or the members, officers, agents, or representatives of a labor organization or anyone acting for such organization, seize, hold, damage, or destroy the plant, equipment, machinery, or other property of the employer with the intention of compelling the employer to accede to any demands, conditions, or terms of employment, or for collective bargaining."

No point under (c) or (d) is offered us, and while, under (b), it was shown that a majority of plaintiffs' employes were non-union, the provisions following the conjunctive "and" do not fit the facts: no effort was made to unionize the theater.

Finally, there is no evidence of misrepresentation or violence which would permit injunctive interference under the Act of 1937 itself. The picketers carried signs reading, "Cinema Art Theater refuses to hire union labor", which we feel reflected the situation reasonably accurately, and might even be considered nearer the mark than the counterattack displayed by plaintiffs, worded, "This theater has no labor trouble and no scab laborers." No situation can be fully explained in a headline.

Plaintiffs make some point about peaceful picketing. Factually, there is evidence that there was no violence whatever, and the worst that appears is that the original three or four picketers were reënforced to ten or more at show time, and that they crowded about the box office and entrance doors in such a way as to make public ingress difficult. A given number of pickets may constitute an illegal obstruction of the sidewalk in view of the available space, but we feel that the evidence before us does not yet warrant our action on that ground. The pickets also told people "in low tones" not to enter.

All this falls short of the violent activities in the cases cited to us and does not in our view constitute violence under the act. It may be, as Judge Dickinson said en passant in Tri-Plex Shoe Co. v. Cantor et al., 25 Fed. Supp.

996, that peaceful picketing is a myth, since the purpose is to stop the employer's business rather than to educate those who run. We know of no case whose point of decision is that a violent idea, without more, is a breach of the peace, and if the notion were carried to its conclusion most business men should be in jail for disorderly conduct, because they seek to put their competitors out of business. It might be better so, for ideas are the combustible material of action, but the world is not yet wise enough for that. Meanwhile, we must judge the character of picketing by what is done.

The application for preliminary injunction is denied.